APR 21 '11 PM 3:55 USB

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| In re:<br><br>SAFE HARBOR BANK, LTD.,<br><br>    Debtor in a Foreign Proceeding. | Case No. 11-_____ (___)<br><br>Chapter 15 |
|---|---|

# EMERGENCY MOTION FOR PROVISIONAL ORDER
## PURSUANT TO SECTIONS 105(A) AND 1519 OF THE BANKRUPTCY CODE AND REQUEST FOR EMERGENCY HEARING

Graham Crabtree, duly appointed Liquidator ("Liquidator" or "Petitioner") of Safe Harbor Bank, Ltd. ("Safe Harbor" or the "Foreign Debtor"), by his undersigned United States counsel, Holland & Knight LLP, respectfully submits this motion (the "Motion") seeking entry of an Order (i) granting provisional injunctive and related relief pursuant to Sections 105(a) and 1519 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") substantially in the form attached hereto as Exhibit A, and (ii) granting an emergency hearing on Friday, April 22, 2011 at or before 12:00 p.m., or as soon as possible thereafter based on the Court's calendar, to consider this Motion. In support of this Motion, the Liquidator has contemporaneously filed, and hereby incorporates herein by reference, the Official Form Petition commencing the above-captioned Chapter 15 proceeding, his Verified Petition and exhibits thereto (together with the Official Form Petition, the "Petition"), and the accompanying Declarations of Graham Crabtree executed on April 20, 2011 (the "Crabtree Declaration"), Joseph A. Delves executed on April 21, 2011 (the "Delves Declaration"), and John J. Monaghan executed on April 20, 2011 (the "Monaghan Declaration," together with the Crabtree Declaration

and the Delves Declaration, the "Declarations"). Through his Petition, the Petitioner is seeking entry of an Order pursuant to Chapter 15 the Bankruptcy Code (the "Bankruptcy Code"): (i) recognizing Safe Harbor's St. Vincent and the Grenadines liquidation proceeding (the "SVG Proceeding"), pending as Claim No. 9 of 2011 before the Eastern Caribbean Supreme Court, High Court of Justice (the "Eastern Caribbean Supreme Court"), as a foreign main proceeding pursuant to Chapter 15 of the Bankruptcy Code and the Liquidator as Safe Harbor's foreign representative under sections 1509 and 1517 of the Bankruptcy Code; (ii) granting automatic relief pursuant to section 1520 of the Bankruptcy Code; and (iii) granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code. Through this Motion, the Petitioner seeks entry of an order granting provisional relief to prevent irreparable harm to Safe Harbor and the SVG Proceeding pending recognition pursuant to sections 105(a) and 1519 of the Bankruptcy Code in the form of an order staying the commencement or continuation of actions and proceedings against the Petitioner, Safe Harbor or Safe Harbor's assets, including staying a recently filed U.S. action in the Barnstable Superior Court, captioned *Spinal Technology, Inc. et al. v. Graham Crabtree, Liquidator of Safe Harbor Bank, et al.*, Civil Docket BACV2011-00179 (the "U.S. Action"), and enjoining creditors from utilizing any judicial or administrative process to execute, restrain or encumber Safe Harbor's assets or otherwise take or continue any action against Safe Harbor or the Liquidator. In further support of this Motion, the Petitioner states as follows:

## I. BACKGROUND

**A.**  **Safe Harbor's Business and the Events Leading to the Cessation of that Business in St. Vincent and the Grenadines**

1. Safe Harbor is a private bank incorporated on May 25, 2000, under the International Business Companies Act 1996, and, prior to its license being revoked, was licensed under the

2

International Banks Act 1996 of St. Vincent and the Grenadines (the "International Banks Act"). *Crabtree Declaration,* ¶ 4. A copy of Safe Harbor's Certificate of Incorporation and its International Banking License are attached as Exhibits A and B, respectively, to the *Crabtree Declaration.* Safe Harbor was formed for the purpose of conducting international banking business under the International Banks Act and pursuant to its Articles of Incorporation. *Crabtree Declaration,* ¶ 5.

2. Safe Harbor's registered address is Nanton's Building, 11 Egmont Street, Box 2630, Kingstown, St. Vincent and the Grenadines. *See id.* at ¶ 6. Safe Harbor's only office is in St. Vincent and the Grenadines and all corporate correspondence to Safe Harbor is addressed to its registered address in St. Vincent and the Grenadines. *Crabtree Declaration,* ¶ 7. The locus of activity related to the winding up of Safe Harbor also will be in St. Vincent and the Grenadines before the Eastern Caribbean Supreme Court. *See id.*

3. Safe Harbor's financial difficulties stem from the following sources, as will be discussed in further detail below: a capital shortfall due to investment losses on its marketable securities, the nonpayment of loans it provided to certain parties related to its former directors and shareholders, and the withdrawal of significant unsecured bank deposits during the course of 2010. *See id.* at ¶ 8.

4. Thomas D. Mangione was one of the founder shareholders of Safe Harbor and was also its Executive Director. *See id.* at ¶ 9. Ariane St. Claire is the former spouse of Mr. Mangione and was the Chief Financial Officer of Spinal Technology, Inc. ("STI"), a Massachusetts corporation founded by James Tierney, who is also the majority shareholder of Safe Harbor. *See id.* Mr. Tierney and STI are two of the plaintiffs in the recently filed U.S. action against the Petitioner, Mr. Mangione, and Ms. St. Claire in the Barnstable Superior Court,

3

captioned *Spinal Technology, Inc. et al. v. Graham Crabtree, Liquidator of Safe Harbor Bank, et al.*, Civil Docket BACV2011-00179 (the "U.S. Action"), in which the plaintiffs seek, among other things, a preliminary and permanent injunction prohibiting the Petitioner from discharging his duties in the SVG Proceeding of liquidating and collecting assets of Safe Harbor. The U.S. Action is described in further detail in Section III(C) herein.

5. On or about March 26, 2008, Safe Harbor advanced $3,300,000 to STI (the "STI Loan") pursuant to a Warranty Bill of Sale and Assignment of Receivables (the "STI Agreement") and was granted a security interest in collateral of STI consisting of "[a]ll contract rights, including without limitation 'contract rights' as defined in UCC Section 9-106 to cash proceeds of all the receivables sold by Spinal Technology Inc. with a principal office at 191 Mid-Tech Drive, West Yarmouth, MA, up to the limit of purchase funds advanced under this agreement..." (the "Collateral") pursuant to a Security Agreement dated March 26, 2008 (the "Security Agreement"). *Crabtree Declaration*, ¶ 10. Safe Harbor perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Massachusetts Secretary of State on March 27, 2008. *See id.* at ¶ 11.

6. Under the STI Agreement, STI was obligated to repay the advance in forty-eight (48) monthly payments of principal and interest in the amount of US$83,333.33, commencing May 1, 2008 and continuing through May 1, 2012. *See id.* at ¶ 12. Failure of STI to deliver the receivables due to Safe Harbor from the sale of STI's manufactured products constituted a material default under the STI Agreement. *See id.* STI stopped making its requisite receivables payments in April 2010. *See id.* As of October 20, 2010, the approximate date that a controller was appointed to take over the operations of Safe Harbor, the amount outstanding on the STI

Loan totaled US$1,650,000 and STI was six months in arrears on its payments, in the amount of $412,500. *See id.* at ¶ 13.

7.     In order to manage the accounts receivable under the STI Agreement, Safe Harbor entered into a Servicing Agreement dated March 26, 2008 with an affiliate Safe Harbor Finance LLC ("Safe Harbor Finance"), a Delaware limited liability company. *See id.* at ¶ 14. Safe Harbor also established a lock box account with STI pursuant to a Lock Box Service Agreement dated March 26, 2008. *See id.* at ¶ 15.

8.     STI claims that the amount it owes to Safe Harbor has been fully satisfied as it offset certain amounts allegedly owed by Safe Harbor to Spinal Group, Inc. ("SGI"), a Massachusetts corporation and affiliate of STI, against the outstanding balance owed by STI due to Safe Harbor. *Crabtree Declaration,* ¶ 16. SGI purportedly assigned its alleged claims against Safe Harbor to STI pursuant to an Assignment of All Accounts Receivable Due from Safe Harbor Bank, Ltd. dated December 16, 2010. *See id.* The alleged amounts due by Safe Harbor to SGI total $2,095,168.62, inclusive of interest in the amount of $539,541.47, as of November 24, 2010. This amount includes an alleged advance in the amount of $104,500 plus interest from STI to an entity referred to as Safe Harbor Financial Group. *See id.* at ¶ 17. The SGI amount consists of a series of advances allegedly paid to Safe Harbor at the direction of Mr. Mangione, consisting of fees to Mr. Mangione, compensation to a vice president of Safe Harbor, Juergen Beck, who sometimes temporarily worked out of STI's Massachusetts offices for convenience purposes, and travel expenses, among other things. *See id.*

9.     Safe Harbor is also holder of a note dated December 31, 2008, under which Ms. St. Claire, in her capacity of trustee of the Simon Realty Trust under Declaration of Trust dated January 3, 2007, borrowed the sum of $340,000, which amount included prepaid interest at the

5

rate of 6% (the "St. Clair Loan Agreement"). *See id.* at ¶ 18. The loan had a one-year term, with a maturity date of December 31, 2009. *See id.* In the event of default, the St. Claire Loan Agreement provides for a penalty of 5% of the delinquent payment. *See id.* Ms. St. Claire failed to make payments with respect to the St. Claire Loan Agreement and the amount due on the loan as of October 2010 totaled not less than $390,869. *See id.*

10. As security for the St. Claire Loan Agreement, Ms. St. Claire pledged property described as Unit No. 316, Orleans, Massachusetts (the "Orleans Property"). *See id.* at ¶ 19. Upon information and belief, the Orleans Property has been sold. *See id.*

11. The International Financial Services Authority of St. Vincent and the Grenadines ("IFSA")[1] undertook an onsite examination of Safe Harbor in January 2009 and it was discovered that the bank was experiencing a capital shortfall problem due primarily to investment losses on its marketable securities. *Crabtree Declaration,* ¶ 20. Safe Harbor's external auditor, KPMG Chartered Accountants, confirmed the IFSA's assessment and Safe Harbor was classified as a "problem bank." *See id.*

12. The IFSA has been monitoring Safe Harbor since that time in its efforts to recapitalize. *See id.* at ¶ 21. Safe Harbor failed to meet its reporting requirements to the IFSA, however, as it did not submit monthly financial reports for the period of July 2010 to September 2010. *See id.*

13. In addition to the loss of revenue from the non-payment of the STI and St. Clair Loan Agreements and Safe Harbor's capital shortfall issues, over the course of 2010, Safe Harbor experienced a sharp reduction in its unsecured deposits due to the withdrawal of

---

[1] The IFSA is an entity established by the St. Vincent and the Grenadines International Finance Authority Act, which is responsible for, among other things, the administration and regulation of the international financial sector in St. Vincent and the Grenadines.

6

significant deposits totaling $10,797,801 by a certain family trust from seven related accounts. *See id.* at ¶ 22. Collectively, Safe Harbor's unsecured deposits declined from a reported balance of $12,181,447 as of December 31, 2009 to $3,399,309 as of October 20, 2010. *See id.* at ¶ 23. The deposit balances of a provider of trust and corporate services licensed and regulated by the Anguilla Financial Services Commission and its clients comprise approximately 85% of the remaining deposits. *See id.*

14. On October 14, 2010, Safe Harbor's Executive Director informed depositors that the bank was experiencing liquidity problems. *See id.* at ¶ 24.

15. On October 20, 2010, the IFSA appointed Floyd A. Patterson, a practicing partner with the firm BDO Eastern Caribbean, as controller of Safe Harbor pursuant to section 21(e) of the International Banks Act (the "Controller"). *See id.* at ¶ 25. Upon assuming control of Safe Harbor, the Controller froze all customer transactions and all transactions in clearing were immediately suspended in an effort to safeguard Safe Harbor's assets. *See id.*

16. Immediately before the appointment of the Controller, all directors of Safe Harbor, other than John Dyrud, tendered their resignation. *See id.* at ¶ 26. Accordingly, in October, 2010, there was no local director in the St. Vincent and the Grenadines as required by Section 2(a)(i) of the International Banks Act. *See id.*

17. Safe Harbor's cash assets, including cash on hand and demand deposits placed with other banks totaled US$253,108 as of October 31, 2010. *See id.* at ¶ 27. In addition, the IFSA is holding Safe Harbor's statutory deposit of US$500,000, which was placed with the authority at the time of Safe Harbor's application for a banking license in early 2000. The deposit bears interest at the rate of 2.5% per annum and had a balance of US$501,062 as of November 17, 2010. *See id.*

18. As of October 20, 2010, the amount outstanding on the STI Loan totaled $1,650,000 and STI was six months in arrears on its payments, in the amount of $412,500. *Crabtree Declaration,* ¶ 28. Safe Harbor served a Notice of Default on STI for the outstanding amount on or about November 23, 2010. *See id.* STI failed to cure the default within ten (10) days pursuant to paragraph 5.06 of the Security Agreement. *See id.* As of the appointment of the Controller, the amount due in connection with the St. Claire Loan totaled not less than $390,869. *See id.* at ¶ 29.

19. Safe Harbor also has an interest in real estate in the amount of $500,000 under a pre-construction development agreement with Canouan Village Development Limited ("CVD"), a company incorporated under the Companies Act in St. Vincent and the Grenadines. *See id.* at ¶ 30. On or about December 3, 2007, Safe Harbor bought an interest in real estate located in Canouan Village Resort & Residences on the island of Canouan in St. Vincent and the Grenadines. *See id.* CVD is a subsidiary of Canouan Village Development, LLC, a limited liability company incorporated in Delaware, which is owned or controlled, upon information and belief, by Mr. Mangione, Ms. St. Clair, and Mr. Tierney. *See id.*

20. Upon his appointment, the Controller opened an account at the National Commercial Bank (SVG) Limited for payment of operating expenses of the Controller, which account's balance totaled $2,335, Eastern Caribbean Currency, as of October 31, 2010. On November 25, 2010, a US dollar account was opened as well. *See id.* at ¶ 31.

21. As of the Controller's appointment, Safe Harbor's liabilities totaled $3,419,980, consisting of accounts payable and accrued liabilities to trade creditors in the amount of $20,671 and unsecured customer deposits of $3,399,309. *See id.* at ¶ 32. In addition, Safe Harbor held

8

certain deposits and investments pledged under trust totaling $436,690 as of October 2010 and the corresponding customer balance under trust totaled $436,690. *See id.*

22.  Safe Harbor's assets as of the appointment of the Controller totaled US $2,904,170, while Safe Harbor's liabilities totaled US $3,419,980, resulting in a net deficiency, assuming all assets could be realized, of at least $515,810. *See id.* at ¶ 33.

23.  The Controller ultimately recommended to the IFSA that Safe Harbor should be placed into liquidation proceedings. *See id.* at ¶ 34.

24.  The IFSA revoked Mr. Patterson's Controllership of Safe Harbor on January 6, 2011 and took possession of Safe Harbor's premises. *Crabtree Declaration* at ¶ 35. Safe Harbor no longer has any employees and has not been operating as a going concern since the appointment of the Controller in October 2010. *See id.* at ¶ 36. The IFSA also revoked Safe Harbor's banking license[2], effective as of January 10, 2011. *See id.* at ¶ 37.

**B.   The SVG Proceeding**

25.  In accordance with the recommendation of the Controller and the IFSA, on January 11, 2011, the Attorney General of St. Vincent and the Grenadines filed a petition for the winding up of Safe Harbor (the "Winding Up Petition") before the Eastern Caribbean Supreme Court, pursuant to the St. Vincent and the Grenadines Companies Act, Act No. 8 of 1994 (the "Companies Act"), the International Business Companies (Amendment and Consolidation) Act of 2007 (the "International Business Companies Act"), and the International Banks Act of 2004.[3]

---

[2] The statutory minimum capital requirement for a class 1 banking license in St. Vincent and the Grenadines is US$500,000. In addition, a bank must have at least two directors, one of who must be a resident director. The principal place of business and business of the bank must also be in St. Vincent and the Grenadines.

[3] True copies of the relevant portions of the Companies Act are attached as Exhibit A of to *Declaration of Joseph A. Delves*, filed contemporaneously with this Verified Petition.

9

26.     The Eastern Caribbean Supreme Court appointed the Petitioner, Mr. Crabtree, as Provisional Liquidator of Safe Harbor, pursuant to an Order dated January 15, 2011 and entered on January 17, 2011 (the "Provisional Appointment Order"). Pursuant to the Order, the Petitioner was tasked, among other things, with safeguarding the assets of Safe Harbor and doing "all things considered necessary by him in connection with the collection and preservation of the assets" pending a hearing on the Winding Up Petition. A copy of the Provisional Appointment Order is attached to the *Crabtree Declaration* as Exhibit C.

27.     Subsequent to entry of the Provisional Appointment Order, Mr. Crabtree, who is located in The Valley, Anguilla, appointed David R. Sargeant as his Safe Harbor representative (the "Representative") for any time that he is physically unable to be present in St. Vincent and the Grenadines. *See id.* at ¶ 40. Mr. Sargeant is the Director of Client Services/Compliance and MLRO at First Anguilla Trust Company Limited and also a Director of First Nevis Trust Company Limited in Nevis. *See id.* at ¶ 41.

28.     On February 2, 2011, the Liquidator provided a second notice of default to STI (the "Notice of Default"), informing the company of its obligation, in accordance with the STI Agreement and Security Agreement, to repay the outstanding sum of US$1,650,000, plus "interest at the highest rate allowable by law, any and all expenses, including legal expenses and reasonable attorney's fees, reasonably incurred or expended by [Safe Harbor] in the insurance, discharge, or encumbrances, protection, or liquidation of Collateral pledged hereunder, and in collection or attempted collection of proceeds thereof, and in protecting and enforcing the covenants and other rights of the Secured Party." A copy of the Notice of Default is attached as Exhibit D to the *Crabtree Declaration*.

29. A hearing on the Winding Up Petition was held on April 7, 2011. The Eastern Caribbean Supreme Court entered an Order on the Winding Up Petition, providing, among other things, that Safe Harbor be wound up in accordance with the provisions of the Companies Act and the International Business Companies Act and appointing Mr. Crabtree as liquidator, with all of the powers of a liquidator under the Companies Act. A certified copy of the Order is attached to the Petition as Exhibit A.

30. Pursuant to the Order, to effectuate the Safe Harbor's liquidation, the Petitioner is authorized to:

> Take possession of, gather in and realize all the present future assets and property of [Safe Harbor] including without limitation, any real and personal property, cash, choses in action, negotiable instruments, security granted or assigned to [Safe Harbor], and rights, tangible or intangible, wheresover situate and to take such steps as are necessary or appropriate to verify the existence and location of all the assets of [Safe Harbor], or any assets formerly held whether directly or indirectly or to the order of or for the benefit of [Safe Harbor] or any present or former subsidiary or company associated with [Safe Harbor], including the terms of all agreements or other arrangements relating thereto, whether written or oral, the existence or assertion of any lien, charge, encumbrance or security interest theron, and any other matters which in the opinion of the Liquidator may effect the extent, value, existence, preservation, and liquidation of the assets and property of [Safe Harbor].

Order at ¶ 1.

31. As an officer of the Eastern Caribbean Supreme Court, the Petitioner also has the authority, under the Order, to:

> act in St. Vincent and the Grenadines, as well as any foreign jurisdiction where he believes assets and property of [Safe Harbor] may be situate and shall have the right to bring any proceedings or action or seek recognition in a foreign jurisdiction for the purpose of fulfilling their duties and obligations under this Order and the Act generally and the right and power specifically to seek recognition under Chapter 15 of the United States of America Bankruptcy Code and to seek the assistance of any court of a foreign jurisdiction in the carrying out [of] the provisions of this Order or any subsequent order in this proceeding, including, without limitation, an order of examination of persons believed to be knowledgeable of the affairs, assets and property of [Safe Harbor].

*Id.* at ¶ 12.

11

32. The Court's recognition of the SVG Proceeding as a foreign main proceeding under Chapter is necessary to ensure the implementation of the Order, protect Safe Harbor's U.S.-based Collateral and fulfill the objectives of the Winding Up Petition in the SVG Proceeding.

C.     **Safe Harbor's United States-Based Litigation**

33. Safe Harbor is a defendant in the U.S. Action filed in the Barnstable Superior Court some two and half months after commencement of the SVG Proceeding, captioned *Spinal Technology, Inc. et al. v. Graham Crabtree, Liquidator of Safe Harbor Bank, et al.*, Civil Docket BACV2011-00179.

34. In their Verified Complaint (the "Complaint"), the plaintiffs, STI, SGI, and James Tierney (collectively, the "Plaintiffs") seek, in addition to the specific relief requested against Safe Harbor, Mr. Mangione, and Ms. St. Claire (collectively, the "Defendants") in Counts I through VII of the complaint, an order "[t]emporaily restraining, preliminarily and permanently enjoining, the Defendants, and their assigns officers, agents, servants, employees, attorneys and liquidators, and any affiliated companies or other persons in active concert or participation with them from (a) taking any action against the assets of Spinal Technology, Inc., Spinal Group, Inc. or their affiliates which were pledged or identified as security to Safe Harbor Bank, Ltd." *Verified Complaint dated March 28, 2011* (the "Complaint") attached as Exhibit A to the *Monaghan Declaration*.

35. While the plaintiffs have attempted to serve the complaint in the U.S. Action on the Liquidator by e-mail and mail under the Massachusetts long-arm statute, proper service of the complaint on a resident of Anguilla has not yet been effected. *See Delves Declaration* at ¶ 5. Moreover, Section 386 of the Companies Act precludes the filing of such action against Safe

Harbor without leave from the Eastern Caribbean Supreme Court, which the Plaintiffs in the U.S. Action have neither sought nor obtained. *See Delves Declaration* at ¶ 14 (citing *Companies Act*, Part IV, Div. B, § 386 (Under SVG law, the entry of a winding-up order or the appointment of a provisional liquidator stays the continuance or commencement of any action or proceeding against the subject company except by leave of the court, and only pursuant to such terms as the court may impose)).

36. Nonetheless, a hearing on the injunctive relief requested by the plaintiffs through their Complaint is scheduled for April 22, 2011 in the Barnstable Superior Court. Accordingly, the U.S. Action and the requested injunctions threaten the orderly liquidation of Safe Harbor in the SVG Proceeding and are the subject of this Emergency Motion.

## II. RELIEF REQUESTED

37. Pending the entry of an order on recognition, the Petitioner seeks the following provisional relief pursuant to sections 105(a) and 1519 of the Bankruptcy Code:

    i. Entry of an order substantially in the form attached hereto as Exhibit A (the "Provisional Relief Order"),

        a. provisionally staying the U.S. Action;

        b. staying and enjoining execution, attachment or restraint of Safe Harbor's assets,

        c. prohibiting all persons from commencing or continuing any litigation or any other proceeding, including, without limitation, appeals, mediation or any judicial, quasi judicial, administrative or regulatory action, proceeding, or any process whatsoever, or taking any other actions against the Petitioner (with respect to Safe Harbor), Safe Harbor, or any of Safe Harbor's assets, and prohibiting all persons from seeking issuance of process or initiating United States proceedings designed to effectuate the restraint, turnover or execution of Safe Harbor assets or interests located outside the United States.

13

38.  Such relief will ensure, among other things, that Safe Harbor's U.S. assets with respect to the STI Loan will not be improperly disposed of or withheld by STI pending the hearing on recognition of the SVG Proceeding. Notwithstanding the foregoing, the relief requested herein will in no way affect any rights pursuant to sections 555, 556, 557, 559, 560, 561, 562 and 1519(d) and (f) of the Bankruptcy Code.

### III. BASIS OF APPLICATION FOR PROVISIONAL RELIEF

39.  Pending the hearing on recognition, the Petitioner requests the issuance of a temporary order staying the U.S. Action.

40.  Section 1519(a) of the Bankruptcy Code permits the Court to grant "relief of a provisional nature" from the time a petition for recognition is filed until the court rules on that petition, where such relief is "urgently needed to protect the assets of the debtor or the interest of the creditors." 11 U.S.C. § 1519(a). The specific relief that may be granted under section 1519(a) and that is requested here includes, *inter alia,* staying execution against the Foreign Debtor's assets; suspending the right to transfer, encumber or otherwise dispose of any assets of the Foreign Debtor; entrusting the administration or realization of all or part of the Foreign Debtor's assets within the territorial jurisdiction of the United States to the foreign representative in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; providing for the examination of witnesses; or granting any other relief, with certain exceptions, that may be available to a trustee. *Id.; see also* 11 U.S.C. § 1521(a)(3), (4) and (7) (setting forth additional forms of relief allowed under provisional order as incorporated by reference in 11 U.S.C. § 1519(a)(3)).

41. A temporary stay of U.S. Action pending this Court's decision on the Petition is urgently necessary to preserve the estate and protect all of Safe Harbor's creditors.

42. Under St. Vincent and the Grenadines law, the entry of a winding-up order or the appointment of a provisional liquidator stays the continuance or commencement of any action or proceeding against the subject company except by leave of the court, and only pursuant to such terms as the court may impose. *See Delves Declaration* at ¶ 14 (citing *Companies Act*, Part IV, Div. B, § 386). Courts in the United States have generally respected such stays arising in foreign insolvency and liquidation proceedings under principles of international comity. *See, e.g., Cunard S.S. Co. Ltd. v. Salen Reefer Servs., A.B.*, 773 F.2d 452, 459 (2d Cir. 1985)("American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities").

43. In addition, the key principle underlying the winding up provisions of the Companies Act is that like creditors should be treated alike. *See Crabtree Declaration* at ¶ 60. No creditor should be permitted to gain an unfair advantage by disrupting the duties of the Liquidator and seeking relief against U.S. assets of Safe Harbor. If the requested injunction in the U.S. Action is permitted to enter against Safe Harbor, it will jeopardize the Liquidator's ability to effect an equitable distribution of assets in the SVG Proceeding. The U.S. Action will divert critical resources of Safe Harbor toward needless U.S. litigation, and will make the winding up of Safe Harbor more difficult and costly to achieve. The relief requested through this Motion is necessary to maintain the status quo. *Crabtree Declaration*, ¶ 61.

44. "Equality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2262, 110 L.Ed.2d 46 (1990). Additionally, "[t]he road to equity is not a race course for the swiftest." *Israel British Bank*

*(London), Ltd. v. Fed Deposit Ins. Corp.*, 536 F.2d 509, 513 (2d Cir. 2006), *cert. denied sub nom. Bank of the Commonwealth v. Israel-British Bank (London) Ltd.*, 429 U.S. 978 (1976) (internal citations omitted).

45. Rather than diverting Safe Harbor's resources to the U.S. Action, the relief requested herein will afford the Liquidator the "breathing room" necessary to conduct an orderly review of Safe Harbor's affairs and ensure that its creditors receive equitable treatment.

46. Provisional relief such as that is requested here has been granted to foreign representatives in other chapter 15 cases in this jurisdiction and others. *See, e.g., In re Bedminster Int'l, Ltd.*, Case No. 10-12476 (JNF) (Bankr. D. Mass. March 10, 2010) [Docket No. 13]; *In re Lee*, Case No. 09-21377 (JNF) (Bankr. D. Mass. Nov. 25, 2009) [Docket No. 10]; *see also In re Transfield ER Cape*, No. 10-16270 (MG) (Bankr. S.D.N.Y. Nov. 24, 2011); *In re Britannia Bulkers A/S*, No. 08-15187 (REG) (Bankr. S.D.N.Y. Jan. 5, 2009); *In re The Int'l Banking Corp., B.S.C.* No 09-17318 (Bankr. S.D.N.Y., Jan. 5, 2009) (SMB). The Petitioner respectfully asks the Court to do likewise here.

### A. Petitioner Satisfies the Standards Applicable to an Injunction

47. Section 1519(e) provides: "The standards, procedures, and limitations applicable to an injunction shall apply to [a request for provisional] relief under this section." 11 U.S.C. §1519(e). The First Circuit has outlined four factors for courts to consider in evaluating whether to grant a preliminary injunction: "(1) the movant's probability of success on the merits, (2) the likelihood of irreparable harm absent preliminary injunctive relief, (3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue, and (4) how the granting or denial of an injunction will interact with the public interest." *New Comm. Wireless Servs., Inc. v. Sprintcom, Inc.*, 287 F.3d 1, 8-9 (1st Cir. 2002); *see also Lanier Professional Services, Inc. v. Ricci*, 192 F.3d 1, 3 (1st Cir.1999). The first factor is considered

16

most important in evaluating the merits of a preliminary injunction request. *New Comm. Wireless Services, Inc.*, 287 F.3d 1, 8 (1st Cir. 2002); *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993) (the *sine qua non* of the four-part inquiry is likelihood of success on the merits). The relevant factors are satisfied in the present case.

### i. Irreparable Harm

48.    An estate is irreparably harmed when the orderly determination of claims and equitable distribution of assets are endangered. *See In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) (enjoining any proceedings against assets of the foreign debtor on the ground that "the dissipation of finite resources of an insolvent estate constitutes irreparable injury"); 2 Collier on Bankruptcy, 304.05 at 304-21 (Alan N. Resnick & Henry J. Somme eds., 15th ed. rev. 2009) ("irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum").

49.    As described above, the requested provisional relief is required to allow the Liquidator to perform his statutory and court-ordered functions, preserve Safe Harbor's property and ensure that Safe Harbor's creditors receive equitable treatment. The threats to these goals have already materialized, as evidenced by the request for a preliminary injunction which will serve to constrain the Liquidator in his duties in the SVG Proceeding with respect to Safe Harbor's property. *See Petition of Rukavina*, 227 B.R. 234, 242 (Bankr. S.D.N.Y. 1998) (the commencement or pendency of local litigation irreparably harms a foreign debtor because it encourages a "race to the courthouse").

### ii. Likelihood of Success on the Merits

50. As discussed above, there is ample evidence and legal precedent to support the following findings:

   a. that the Petitioner is a foreign representative;

   b. that the SVG Proceeding is a foreign proceeding;

   c. that Safe Harbor is a St. Vincent and the Grenadines entity that maintains its registered office in St. Vincent and the Grenadines;

   d. that Safe Harbor is entitled to a statutory presumption that St. Vincent and the Grenadines is Safe Harbor's COMI;

   e. that the facts of this case further support a finding that the St. Vincent and the Grenadines is Safe Harbor's COMI; and

   f. that this Petition otherwise meets all of the requirements for recognition under Chapter 15 of the Bankruptcy Code.

The Court, therefore, should find that the Petitioner has shown a likelihood of success on the merits.

### iii. Balance of Hardships

51. The equities weigh strongly in favor of granting the Petitioner the requested provisional relief. Temporarily staying the U.S. Action and enjoining additional U.S. proceedings against Safe Harbor pending the hearing on recognition will prevent permanent and irreparable harm to Safe Harbor's estate and interference with the St. Vincent and Grenadines liquidation proceeding.

52. Staying the existing U.S. Action with respect to Safe Harbor, however, will not prejudice the other parties thereto. Under the circumstances, the provisional relief sought will

not prejudice any affected party's rights in the United States, but will simply maintain the *status quo* with respect to Safe Harbor. Accordingly, the Petitioner submits that he is entitled to the requested provisional relief.

### IV. NOTICE

53. Section 1517(c) requires that "a petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time." Bankruptcy Rule 2002 sets forth a twenty-one day notice requirement to parties in interest, with certain exceptions, to approve the Petition. No stay applies in a Chapter 15 proceeding until a foreign proceeding is formally recognized.

54. Accordingly, Section 1519 of the Code allows a foreign representative to request emergency, provisional relief until recognition. The Liquidator submits that emergency relief is appropriate under the circumstances because the relief requested is merely an extension of the relief that has already been granted by the Eastern Caribbean Supreme Court in the SVG Proceeding.

55. The Petitioner proposes that once a hearing date has been set by the Court with respect to this Motion, the Petitioner will serve notice forthwith by electronic mail or facsimile upon all parties against whom provisional relief is sought (or their counsel) and parties in interest. The Petitioner submits that such notice is reasonable and appropriate under the circumstances.

[Remainder of the Page Intentionally Blank]

## V. CONCLUSION

WHEREFORE, the Petitioner respectfully requests that this Court enter the Order, substantially in the form of Exhibit A hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: April 21, 2011

                                                        Respectfully submitted,

                                                        GRAHAM CRABTREE, IN HIS CAPACITY AS
                                                        LIQUIDATOR OF SAFE HARBOR BANK, LTD.

                                                        By his Attorneys

                                                        HOLLAND & KNIGHT LLP

                                                        /s/ John J. Monaghan
                                                        John J. Monaghan (Mass Bar 546454)
                                                        Lynne B. Xerras (Mass Bar 632441)
                                                        Diane N. Rallis (Mass Bar 652203)
                                                        Nicole Prairie (Mass Bar 675824)
                                                        10 St. James Avenue
                                                        Boston, MA 02116
                                                        Ph: (617) 523-2700
                                                        Fax: (617) 523-6850
                                                        E-mail: bos-bankruptcy@hklaw.com

APR 21 '11 PM 3:55 USB