APR 21 '11 PM 3:57 USB

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

SAFE HARBOR BANK, LTD.,

      Debtor in a Foreign Proceeding.

Case No. 11-_____ (___)

Chapter 15

## AFFIDAVIT OF JOHN J. MONAGHAN

I, John J. Monaghan, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1. I am a partner at the law firm of Holland & Knight LLP, and am licensed to practice law in the Commonwealth of Massachusetts and before the United States District Court for the District of Massachusetts.

2. I am lead counsel representing Graham Crabtree, duly appointed Liquidator ("Liquidator" or "Petitioner") of Safe Harbor Bank, Ltd. ("Safe Harbor" or the "Foreign Debtor"), in connection with the filing of the Official Form Petition and Verified Petition and exhibits thereto (collectively, the "Petition") in the above-captioned proceeding, seeking entry of an Order pursuant to chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") for recognition of Safe Harbor's St. Vincent and the Grenadines liquidation proceeding (the "SVG Proceeding"), pending as Claim No. 9 of 2011 before the Eastern Caribbean Supreme Court, High Court of Justice (the "Eastern Caribbean Supreme Court") pursuant to the St. Vincent and the Grenadines Companies Act, Act No. 8 of 1994 (the "Companies Act").

3. I submit this Affidavit in connection with the Petition.

4. Attached to this declaration as Exhibit **A** is a copy of the Complaint filed by plaintiffs, Spinal Technology, Inc., Spinal Group, Inc., and James Tierney (collectively, the "Plaintiffs") against the Petitioner, Thomas Mangione, and Ariane St. Claire in the Barnstable Superior Court, captioned *Spinal Technology, Inc. et al. v. Graham Crabtree, Liquidator of Safe Harbor Bank, et al.*, Civil Docket BACV2011-00179 (the "U.S. Action"), that has come into my possession.

5. I am informed that the Plaintiffs have attempted to serve the complaint in the U.S. Action on the Petitioner by e-mail and mail. I am further informed that neither e-mail nor mail are proper means of effecting service of process under Anguillan law.

I declare, under penalty of perjury under the laws of the United States of America, that the information set forth above is based on my current knowledge, information and belief after reasonable inquiry, and in contemplation of and subject to supplementation, true and correct.

Executed on this 20th day of April, 2011.

John J. Monaghan, Esq.
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116

<u>Exhibit A</u>

<u>Monaghan Declaration</u>

BARNSTABLE SUPERIOR COURT
COMMONWEALTH OF MASSACHUSETTS

SPINAL TECHNOLOGY, INC.
SPINAL GROUP, INC. and
JAMES TIERNEY,
      Plaintiffs

VS.                                    C.A. NO.

GRAHAM CRABTREE IN HIS
CAPACITY AS PROVISIONAL
LIQUIDATOR OF SAFE HARBOR
BANK, LTD., THOMAS D. MANGIONE,
And ARIANE ST. CLAIRE,           **JURY TRIAL DEMANDED**
      Defendants

## VERIFIED COMPLAINT

### Parties

Now come Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney ("Tierney") to allege as follows:

1. Plaintiff Spinal Technology, Inc. is a Massachusetts corporation in good standing with a principal place of business at 191 Med-Tech Drive, West Yarmouth, Massachusetts 02673.

2. Spinal Technology, Inc. manufactures and distributes customized and stock orthopedic braces for backs and joints used for trauma patients, amputees, post-surgical patients, and for other medical applications.

3. Plaintiff Spinal Group, Inc. is a Massachusetts corporation in good standing with a principal place of business at 191 Med-Tech Drive, West Yarmouth, Massachusetts 02673.

4. Spinal Group, Inc. is affiliated with Spinal Technology, Inc. and provides management services including payroll.

5. Plaintiff Tierney is a citizen of Arizona residing at 31615 N. 135th Street, Scottsdale, AZ 85262-7944.

6. Tierney is President and sole shareholder of Spinal Technology, Inc. and Spinal Group, Inc. and is a major shareholder of Defendant Safe Harbor.

7. Defendant Graham Crabtree of CEG, Ltd., P.O. Box 294, Anguilla, British West Indies and P.O. Box 294, The Valley, Anguilla, British West Indies, is Provisional Liquidator of Safe Harbor Bank ("Safe Harbor") which is a banking institution chartered under the laws of St. Vincent and the Grenadines, British Virgin Islands with a principal place of business at Nanton's Building, Egmort Street, P.O. Box 2630, Kingston, St. Vincent and the Grenadines, British Virgin Islands, and which was petitioned into receivership on January 10, 2011 in the St. Vincent and The Grenadines High Court of Justice.

8. Defendant Thomas D. Mangione ("Mangione") upon information and belief is a citizen of New York residing at 35 Albany Street, New York, NY.

9. Defendant Ariane St. Claire ("St. Claire") upon information and belief is a citizen of Massachusetts residing at 84 Governor's Way, Barnstable, MA 02630.

**Jurisdiction and Venue**

10. Jurisdiction and venue are properly in Barnstable County, Massachusetts Superior Court as the Plaintiff Corporations, Defendant St. Claire and the majority of the assets of the Plaintiff Corporations are located in Barnstable County, and the amount in controversy exceeds $25,000.

11. Defendants have established sufficient minimum contacts with Massachusetts to be subject to its general and specific jurisdiction.

2

12. Safe Harbor's agent and employee, Juergen Beck, operated the Bank from Spinal Technology, Inc.'s offices in West Yarmouth from February 1, 2005 through July 31, 2006 during which time Spinal Group, Inc. paid his compensation, business, housing and automobile expenses.

13. Mangione visited Spinal Technology, Inc.'s offices in West Yarmouth numerous times between 2005 and 2009 to solicit investors for Safe Harbor and to make loans in Massachusetts.

14. In Massachusetts, Mangione solicited investors for Safe Harbor and his own real estate development project (Canauan Village) including Tierney who initially invested $1,000,000 in Safe Harbor, and Richard Gregory Allen, a Massachusetts resident who also invested. Mangione also negotiated loans in Massachusetts including several to Spinal Technology, Inc.

**Background**

15. Spinal Technology, Inc. manufactures and distributes customized and stock orthopedic braces for backs and joints for trauma patients, amputees, post-operative surgical patients, and for other medical applications. *Affidavit of Donald J. Montefusco, Paragraph 4.*

16. Spinal Technology, Inc. employs between 35 and 45 people in its Falmouth facility and an equal number in its Kentucky facility which serves the western half of the United States. *Affidavit of Donald J. Montefusco, Paragraph 5.*

17. An affiliate of Spinal Technology, Inc., Spinal Group, Inc., which employs 8 to 12 people, is funded by Spinal Technology, Inc. and provides management services such as payroll and benefits. *Affidavit of Donald J. Montefusco, Paragraph 6.*

18. Plaintiff Spinal Technology, Inc. was a borrower from Safe Harbor, Plaintiff Spinal

Group, Inc. is a creditor that paid operational expenses for Safe Harbor such as executive compensation, and Plaintiff James Tierney invested over $1,000,000 in Safe Harbor. *Affidavit of Donald J. Montefusco, Paragraph 7.*

19. Thomas D. Mangione founded Safe Harbor as an off-shore bank for wealthy depositors. He was a shareholder, director and manager for Safe Harbor, is a New York resident and the ex-husband of a former Spinal Technology, Inc. employee, Ariane St. Claire. *Affidavit of Donald J. Montefusco, Paragraph 8.*

20. Mangione convinced Tierney to make an initial investment of $1,000,000 in Safe Harbor for a fixed percentage of common and preferred stock which Mangione and Safe Harbor subsequently diluted by bringing in more investors. *Affidavit of Donald J. Montefusco, Paragraph 9).*

21. St. Claire had Spinal Group, Inc. pay Safe Harbor's expenses during the initial startup or growth period to improve the Bank's balance sheet and allow it to become self-sufficient. *Affidavit of Donald J. Montefusco, Paragraph 10.*

22. Spinal Group, Inc. paid expenses for Safe Harbor totaling $2.1 million which are documented and for which Safe Harbor had an obligation to repay Spinal Group, Inc. through offset or otherwise. *Affidavit of Donald J. Montefusco, Paragraph 11.*

23. Some of the expenses paid by Spinal Group, Inc. were for Juergen Beck, a Swiss-trained banker employed by Safe Harbor who worked and operated full-time from Spinal Technology, Inc.'s offices in West Yarmouth,, Massachusetts from February 1, 2005 through July 31, 2006 during which time Spinal Group, Inc. paid his compensation, business, housing and automobile expenses. *Affidavit of Donald J. Montefusco, Paragraph 12.*

24. In Massachusetts, Mangione solicited Tierney's initial one million dollar investment

in Safe Harbor, Mangione negotiated the terms of Spinal Technology, Inc.'s loans with Safe Harbor and he drew compensation for Spinal Group, Inc. as well as consulting fees and director fees through Safe Harbor. *Affidavit of Donald J. Montefusco, Paragraph 13.*

25. Mangione and/or St. Claire also solicited in Massachusetts investment funds for Safe Harbor from Richard Gregory Allen, a Spinal Technology, Inc. employee who is a Massachusetts resident.

*Affidavit of Donald J. Montefusco, Paragraph 14.*

26. Mangione visited the Spinal Technology, Inc. and Spinal Group, Inc.'s offices in West Yarmouth,, Massachusetts numerous times between 2005 and 1009 to solicit funding for Safe Harbor and himself and to make loans to Spinal Technology, Inc. and to solicit investments for his real estate venture in the Virgin Islands, Canouan Village. *Affidavit of Donald J. Montefusco, Paragraph 15.*

27. A portion of the expenses paid by Spinal Group, Inc. on behalf of Safe Harbor were for Mangione's compensation and expenses. *Affidavit of Donald J. Montefusco, Paragraph 16.*

28. Between 2004 and 2009, Spinal Technology, Inc. employee and Defendant Ariane St. Claire, without authorization, transferred millions of dollars from Spinal Technology, Inc. to Spinal Group, Inc. to pay Safe Harbor, Mangione and herself; she entered into contracts for the benefit of Safe Harbor and Mangione without authority; and she worked for the benefit of Safe Harbor and Mangione while working for Spinal Technology, Inc. *Affidavit of Donald J. Montefusco, Paragraph 17.*

29. St. Claire signed a so-called "bill of sale" for Spinal Technology, Inc.'s receivables despite having no authorizations and not being an officer of the corporation; made Tierney a director of Safe Harbor without his permission or signature; and conducted transactions such as

5

loans and investments by email and without proper documentation. *Affidavit of Donald J. Montefusco, Paragraph 18.*

30. St. Claire misrepresented herself as Chief Financial Officer and Vice President of Spinal Technology, Inc., arranged for payments to Mangione without Tierney's knowledge or approval; transferred funds from Spinal Technology, Inc. to Spinal Group, Inc. to improperly pay Mangione; and helped convince Tierney to invest in Mangione's bank and his real estate development projects. *Affidavit of Donald J. Montefusco, Paragraph 19.*

31. Safe Harbor on or about April 2008 loaned Spinal Technology, Inc. $3.3 million on which a balance of $1.65 million allegedly remains. *Affidavit of Donald J. Montefusco, Paragraph 20.*

32. As security for the loan, which was restructured, Spinal Technology, Inc. entered into an agreement which purported to be a factoring agreement for receivables. *Affidavit of Donald J. Montefusco, Paragraph 21.*

33. Citibank provided cash management services for the factoring arrangement until its withdrawal on or about April 2010. *Affidavit of Donald J. Montefusco, Paragraph 22.*

34. Despite repeated demands, Mangione, who prepared all paperwork associated with the above-referenced loan relationship, has failed to provide Spinal Technology, Inc. with full or adequate documentation of the loans and their related security agreements. *Affidavit of Donald J. Montefusco, Paragraph 23.*

35. In addition to the so-called "factoring agreement," Safe Harbor on March 27, 2008 and December 12, 2008 filed UCC-1 security notices with the Massachusetts Secretary of State covering all assets of Spinal Technology, Inc. *Affidavit of Donald J. Montefusco, Paragraph 24.*

36. On or about January 10, 2011, Safe Harbor was petitioned in receiverships in the

St. Vincent and the Grenadines High Court of Justice, British Virgin Islands. *Affidavit of Donald J. Montefusco, Paragraph 25.*

37. The appointed Provisional Liquidator, Graham Crabtree, by letter dated February 2, 2011, has indicated that he intends to move forthwith against the security. *Affidavit of Donald J. Montefusco, Paragraph 26.*

38. Because of the financial strain of paying $2.1 million of Safe Harbor's expenses during its start-up period, Spinal Technology, Inc. has encountered cash-flow problems. *Affidavit of Donald J. Montefusco, Paragraph 27.*

39. If Spinal Technology, Inc.'s (albeit defective) Promissory Note to Safe Harbor is sold by the Provisional Receiver to a third-party for collection, the viability of Spinal Technology, Inc. and its affiliates will be jeopardized and its customer base and skilled work force irremediably damaged. *Affidavit of Donald J. Montefusco, Paragraph 28.*

40. If Spinal Technology, Inc.'s so-called Assignment Agreement/factoring agreement is reassigned or the trade debtors are contacted to redirect payments, the viability of Spinal Technology, Inc. and its affiliates will be jeopardized and its customer base and skilled work force irremediably damaged. *Affidavit of Donald J. Montefusco, Paragraph 29.*

41. If Safe Harbor, the Provisional Receiver or any assignee of Safe Harbor's security interest contained in the March 27, 2008 and December 12, 2008 UCC-1 notices take any action against the collateral, the viability of Spinal Technology, Inc. and its affiliates will be jeopardized and its customer base and skilled work force irremediably damaged. *Affidavit of Donald J. Montefusco, Paragraph 30.*

42. If any of the adverse actions described in paragraphs 28 through 30 are allowed, Plaintiff Tierney will suffer irreparable harm because he will never recover the investments he made through Mangione, will lose the value of his stock in Spinal Technology, Inc. and Spinal

Group, Inc., will lose his preeminent standing and goodwill in the orthotics and prosthetics industry and will lose Spinal Technology, Inc.'s customers and skilled employees. *Affidavit of Donald J. Montefusco, Paragraph 31.*

### Count I—Breach of Contract

### Plaintiffs Spinal Technology, Inc. and Spinal Group, Inc. against Defendant Safe Harbor

42. Plaintiffs repeat and incorporate paragraphs 1 through 41 as if fully set forth and alleged herein.

43. Safe Harbor agreed and promised to repay Spinal Technology, Inc. and Spinal Group, Inc. for expenses Spinal Technology, Inc. and Spinal Group, Inc. incurred for the benefit of Safe Harbor which total $2.1 million.

44. Despite repeated demands, Safe Harbor has failed and refused to pay this debt obligation as agreed.

45. The amount of this debt obligation exceeds the loan demand that Safe Harbor and its Provisional Liquidator have made for $1.65 million which amount fails to account for the offsetting debt.

46. Safe Harbor has breached its payment obligation to Plaintiffs and Plaintiffs have been damaged thereby.

WHEREFORE, Plaintiffs Spinal Technology, Inc. and Spinal Group, Inc. hereby demand judgment against Safe Harbor for damages in the amount of $450,000, plus consequential and incidental damages, plus interest, costs and attorneys' fees incurred in this action.

8

## Count II—Breach of Fiduciary Duty

### Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney against Defendants Safe Harbor, Thomas D. Mangione and Ariane St. Claire

47. Plaintiffs repeat and incorporate paragraphs 1 through 46 as if fully set forth and alleged herein.

48. Defendants Safe Harbor and Mangione owed a fiduciary duty to Plaintiff Tierney who is the majority shareholder in the Bank.

49. Defendants Safe Harbor and Mangione improperly diluted Tierney's shares of common and preferred stock.

50. Defendants Safe Harbor and Mangione diverted bank assets to Mangione in the form of unearned, unreasonable, excessive and unauthorized direct and indirect compensation when the Bank was insolvent or unprofitable.

51. Defendants Safe Harbor and Mangione made multiple undocumented loans to the Plaintiff corporations, failed to keep proper loan records and failed to make proper reports to shareholders.

52. Defendants Safe Harbor and Mangione solicited investors for the Bank and conducted banking activities in the United States without being properly registered or licensed, thereby endangering Tierney's investment.

53. The actions of Defendants Safe Harbor and Mangione were self-dealing and violated their duty of loyalty to the shareholders.

WHEREFORE, Plaintiff Tierney demands that judgment be entered against Defendants Safe Harbor and Mangione for $1,000,000 plus damages incurred by Plaintiff Tierney plus interest, costs and attorneys' fees incurred in this action.

### COUNT III—Breach of Fiduciary Duty

### Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney against Defendant Ariane St. Claire

54. Plaintiffs repeat and incorporate paragraphs 1 through 53 as if fully set forth and alleged herein.

55. Defendant St. Claire was a senior employee of Plaintiffs who was entrusted with the day-to-day financial operations of Spinal Technology, Inc., Spinal Group, Inc. and their affiliates.

56. Defendant St. Claire was paid approximately $200,000 to $300,000 per annum by the Corporate Plaintiffs.

57. Defendant St. Claire used her position of trust to divert Plaintiffs' funds to Defendants Safe Harbor and Mangione, to name herself as a manager and part owner of new affiliated entities of the Plaintiffs, to unjustly enrich herself and Mangione who is her ex-husband, and to place the interests of Mangione's Safe Harbor Bank and his real estate development project above the interests of her employers.

58. Defendant St. Claire owed Plaintiffs a duty of undivided loyalty which she breached, proximately causing Plaintiffs to incur substantial losses.

WHEREFORE, Plaintiffs demand judgment against Defendant St. Claire in the amount of $1,950,000, plus interest, costs and attorneys' fees incurred in this action.

### COUNT IV—Fraudulent Misrepresentation

### Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney against Defendants Safe Harbor, Thomas D. Mangione and Ariane St. Claire

59. Plaintiffs repeat and incorporate paragraphs 1 through 58 as if fully set forth and

alleged herein.

60. Defendants' scheme for soliciting investments in Safe Harbor which were used primarily to enrich Defendants without supporting banking operations as represented; Defendants' dilution of Tierney's stock despite representations that he would own fixed percentages of the common and preferred stock of the Bank; Defendants' receipt of unauthorized, unreasonable, and excessive expenses from Plaintiff Spinal Group, Inc. that should have been borne by Safe Harbor; Defendants' unlicensed banking activities in Massachusetts; and Defendants' misrepresentations to Tierney to induce him to invest in Canouan Village, each and collectively, constitute fraud and deceit.

61. The Defendants engaged in the fraudulent schemes knowingly and intentionally, and for the purpose of obtaining under false pretenses funds and other property of the Plaintiffs.

62. Plaintiffs justifiably relied on Defendants' fraudulent and deceitful conduct and misrepresentations when Plaintiffs invested in, borrowed from and funded Safe Harbor and its agents.

63. As a consequence of Defendants' fraudulent and deceitful conduct, Plaintiffs have been deprived of property of substantial value and the Defendants have been, and may continue to be, unjustly enriched.

WHEREFORE, Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney demand that judgment be entered against Defendants Safe Harbor and Mangione for $1,950,000 plus interest, costs and attorneys' fees incurred in this action.

### COUNT V—Violation of M.G.L. ch. 93A

**Plaintiffs Spinal Technology, Inc., Spinal Group, Inc.
and James Tierney against Defendants
Safe Harbor, Thomas D. Mangione and Ariane St. Claire**

64. Plaintiffs repeat and incorporate paragraphs 1 through 63 as if fully set forth and

11

alleged herein.

65. Defendants were engaged in the conduct of trade and/or commerce in the Commonwealth of Massachusetts within the meaning of M.G.L. ch. 93A.

66. Defendants' misrepresentations, fraudulent and deceitful conduct, together with their breaches of contract and fiduciary duty, which took place in Massachusetts, are unfair and deceptive trade practices that caused Plaintiffs' monetary loss in Massachusetts and the Defendants' unjust enrichment.

67. Defendants' unfair or deceptive acts were committed knowingly and willfully.

68. Defendant St. Claire also aided and abetted Defendant Mangione in his wrongful acts.

WHEREFORE, Plaintiffs demand judgment against Defendants under M.G.L. ch. 93A §11 for treble damages, interest, costs and attorneys' fees incurred in this action.

### Count VI--Interference with Contractual Relations

### Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney against Defendant Safe Harbor

69. Plaintiffs repeat and incorporate paragraphs 1 through 68 as if fully set forth and alleged herein.

70. Plaintiffs and Defendant St. Claire had a valid employment arrangement between 2004 and 2010 wherein St. Claire was an employee of Spinal Technology, Inc. and Spinal Group, Inc.

71. Defendant St. Claire had a duty of undivided loyalty to the Plaintiffs.

72. Defendants Mangione and Safe Harbor knew of the existence of the contractual relationship between the Corporate Plaintiffs and St. Claire and intentionally induced St. Claire to not perform her obligations to her employers, to breach her fiduciary duty to the Plaintiffs, to

improperly funnel payments to Safe Harbor and Mangione, and to fraudulently induce Tierney to invest in Mangione's bank and his real estate venture.

73. The actions and conduct of Mangione and Safe Harbor were improper in motive and means.

74. As a direct and proximate result of Mangione's and Safe Harbor's actions, the Plaintiffs have suffered substantial damages.

WHEREFORE, Plaintiff Tierney demands that judgment be entered against Defendants Safe Harbor and Mangione for $1,500,000 plus interest, costs and attorneys' fees incurred in this action.

### Count VII—Unjust Enrichment

### Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney against Defendant Safe Harbor, Thomas D. Mangione and Ariane St. Claire

75. Plaintiffs repeat and incorporate paragraphs 1 through 74 as if fully set forth and alleged herein.

76. Defendants received monies and other benefits from Plaintiffs for which they supplied inadequate or illusory consideration.

77. Defendants were unjustly enriched to the detriment of Plaintiffs.

78. Defendant Mangione took excessive and unauthorized compensation and fees from Plaintiffs and cannot account for Plaintiff Tierney's real estate investment; Defendant St. Claire took compensation, expenses, benefits and unearned ownership of new affiliated entities of the Corporate Plaintiffs while acting against the interests of her employer; Defendant Safe Harbor diluted Plaintiff Tierney's shares, made undocumented and unlicensed loans, and failed to operate as a legitimate bank.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendants in an amount equal to all funds and the value of all benefits wrongfully received by them, plus interest, costs and attorneys' fees incurred in this action.

### Count VIII–Declaratory Judgment – Offset

### Plaintiffs Spinal Technology, Inc., Spinal Group, Inc. and James Tierney against Defendant Safe Harbor

79. Plaintiffs repeat and incorporate paragraphs 1 through 78 as if fully set forth and alleged herein.

80. Pursuant to M.G.L. ch. 231A, Plaintiffs request that this Court issue a declaratory judgment to determine that Plaintiff is entitled to offset amounts owed to it by Safe Harbor from the loan balance, if any, it owes to Safe Harbor.

WHEREFORE, Plaintiffs respectfully requests that this Court to determine that Plaintiffs are entitled to a $2.1 million offset to the loan balance alleged to be $1.65 million.

### Prayer for Equitable Relief

WHEREFORE, Plaintiffs respectfully pray that the Court, in addition to the specific relief sought in Counts I through VIII, grant the following relief:

A. Temporarily restraining, preliminarily and permanently enjoining, the Defendants and their assigns, officers, agents, servants, employees, attorneys and liquidators, and any affiliated companies or other persons in active concert or participation with them from (a) taking any action against the assets of Spinal Technology, Inc., Spinal Group, Inc or their affiliates which were pledged or identified as security to Safe Harbor Bank, Ltd., or (b) from contacting either directly or indirectly any factor, customers or trade debtors of Spinal Technology, Inc., Spinal Group, Inc. or their affiliates or (c) assigning to or negotiating with third parties any Promissory Note

14

from Spinal Technology, Inc. or Spinal Group, Inc., or their affiliates to Safe Harbor Bank, Ltd.

B. Issue a Declaratory Judgment that the Plaintiff Corporations are entitled to offset their loan balances to Safe Harbor by monies they have expended for the benefit of Safe Harbor.

C. Award such other relief as this Court deems just and appropriate.

**Plaintiffs Demand Trial by Jury for All Issues So Triable.**

Respectfully submitted,

Plaintiffs, Spinal Technology, Inc.,
Spinal Group, Inc. and James Tierney
By their Attorney,

*/s/ Harris K. Weiner*

Harris K. Weiner, Esquire # 551981
321 South Main Street, Suite 301
Providence, Rhode Island 02903
Office: (401) 274-0300
Facsimile: (401) 453-0073

DATED: 3-28-11

APR 21 '11 PM 3:57 USB

## VERIFICATION

I, Donald J. Montefusco, do state upon oath and under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information and belief.

*/s/ Donald Montefusco*

Subscribed and sworn to before me this 28th day of March, 2011.

_____
Notary Public
My Commission Expires 7/14/13

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

SAFE HARBOR BANK, LTD.,

      Debtor in a Foreign Proceeding.

Case No. 11-_____ (___)

Chapter 15

## DECLARATION RE: ELECTRONIC FILING

**DECLARATION OF AFFIANT/ATTORNEY**

    I, John J. Monaghan, hereby declare under penalty of perjury that all of the information contained in the foregoing *Declaration of John J. Monaghan* (the "Document"), filed electronically, is true and correct. I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document. I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

    I further understand that pursuant to the Massachusetts Electronic Filing Local Rule (MEFLR)-7(a) all paper documents containing original signatures executed under the penalties or perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

    This DECLARATION is based on all information of which I have knowledge and the signature below constitutes a certification under Fed. R. Bankr. P. 9011. I have reviewed and will comply with the provisions of MEFR 7.

Dated: April 20, 2011

Signed: _____
John J. Monaghan, Esq.